## THE CARMELITE NUNS *v.* ROSSY.

### APPEAL from the District Court of San Juan.

No. 64.—Decided March 15, 1906.

ONEROUS CONTRACT—CONSIDERATION.—In onerous contracts the consideration of each contracting party is understood to mean the prestation or promise of a service or thing made by the other party.

ID.—In the contract herein the defendant bound himself to redeem a *censo* which encumbered his property and which was in favor of the plaintiff; subsequently the plaintiff learned that the record of the *censo* had not been transferred to the modern books of the registry and that its transfer had been denied, and in answer to the complaint filed for the purpose of recovering the amount of the *censo*, he alleged that the contract was null and void because it lacked consideration inasmuch as this *censo* did not exist and his porperty appeared from the registry to be free from encumbrance. *Held,* That the existence of the *censo* is one thing and its transfer to the modern books another; that the existence of the *censo* was proven, and that it must be acknowledged that there was in the contract a consideration which was real, legal and effectual.

ID.—Where the consideration is not expressed in a contract, it will be presumed that it exists and that it is legal in the absence of proof to the contrary.

APPEAL—EVIDENCE—BILL OF EXCEPTIONS—STATEMENT OF FACTS.—In order that the Supreme Court may consider on appeal the evidence taken at the trial, it is necessary that the same be set forth in a bill of exceptions or a statement of facts.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Mr. Hawkins* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

The Camelite Nuns, through their attorney in fact, Rev. Manuel Díaz Caneja, filed the following sworn complaint in the District Court of San Juan:

"1. That by virtue of an annuity (*censo*) acknowledged by Tomás Prieto by deed of August 26, 1828, of $733 in favor of the Carmelite Convent, encumbering a farm of 75 *cuerdas* situated in Bayamón, *barrio* of Guaraguao, and duly recorded in the registry of the same place, the plaintiffs, before November 11, 1896, demanded certain arrears of interest of the defendant, who was the owner of said farm of 75 *cuerdas*. The defendant paid $73 and subsequently $63 more on account of said arrears and interest. The plaintiffs having made demand through the collector, Manuel Díaz Caneja, for the balance of the interest, the defendant offered to redeem said annuity, with all interest thereon, by the payment or delivery of 8 mortgage bonds of the Banco Agrícola of the fifth issue, with their respective coupons, of the value of $100 each, and bearing 7 per cent interest. The plaintiffs, through their attorney in fact, Manuel Díaz Caneja, accepted this offer, about November 18, 1896. The defendant has never complied with said contract, refusing to deliver the 8 bonds or to pay the value thereof, although the plaintiffs have made demand therefor and have always stood ready to comply with their part of the contract. Therefore, the plaintiffs pray the court for judgment against the defendant to require him to deliver to the plaintiffs the 8 bonds, with all of their respective coupons and interest from December 1, 1896, to date, or the sum of $800, with the costs of this action. San Juan, P. R., February 11, 1905.—Wm. H. Hawkins, counsel for plaintiff."

The answer, also sworn, was made by the defendant in the following terms:

"1. In 1891 I purchased of Juan Hernández López a farm consisting of 400 *cuerdas* situated in the *barrio* of Guaraguao, Bayamón, bounded on the north and east by other lands belonging to me, on the south by the property of Clemente González, and on the west by the Rio Grande of Bayamón.

"2. I knew that my predecessors in this property paid certain interest on an annuity which, it was alleged, encumbered the estate, and I paid the amounts due, to the year 1893, without ascertaining anything about the matter. The receipts state that the annuity was for $733 in favor of the Carmelite Nuns, the annual interest consequently amounted to $33.65.

"3. Speaking one day with Mr. Díaz Caneja, he suggested that I redeem the annuity encumbering my property, extending facilities to me for the purpose, and I offered to redeem it by delivering 8 mortgage bonds with their respective coupons, to which end I signed a document, which I left in the possession of Mr. Díaz Caneja toward the end of 1896. I believe that said document did not fix any period for the delivery of the bonds.

"4. For the purpose of settling a debt which encumbered the estate in favor of the bar association, the time came for Mr. Hernández López to execute the deed of sale of the estate in my favor, which was done before Notary Mauricio Guerra on November 24, 1896, and I then found, according to the old documents consulted, that the estate was free from annuities; and the deed was so drawn and the property so recorded in the registry of property. Subsequently I heard that the registrar had, in 1895, refused the request of Mr. Díaz Caneja, as the representative of the Carmelite Nuns, to transfer said annuity to the new books of the registry, in compliance with the provisions of the new Mortgage Law.

"5. Consequently, as there was no annuity whatsoever encumbering my estate, my agreement to redeem it was purposeless, and I waited for them to come and demand that I perform my part of the agreement, to clear up a matter of which I had not had any information owing to the fact that until the moment of executing the deed, I had not examined the old documents relating to the farm.

"6. Nothing has ever been said to me on the part of the Carmelite Nuns, nor has any attempt to collect been made until the complaint which I answer was unexpectedly filed.

"7. I therefore deny everything alleged in the complaint contrary to my allegations in this answer.

"In view of the foregoing, I pray the court to dismiss the complaint and to hold that the plaintiffs are not entitled to recover the

annuity referred to, nor to its redemption, on account of such annuity not existing in legal form, and to tax the costs against them. San Juan, March 13, 1905.—Manuel F. Rossy, counsel in his own behalf, defendant.''

The hearing having been had, the judge of the district court, on May 23, 1895, after having read the pleadings and heard the evidence and the arguments, is of the opinion that the facts and the law are in favor of the plaintiff, and therefore renders judgment ordering, as he hereby orders, that the plaintiffs—that is to say, the Carmelite Nuns—recover from the defendant, Manuel F. Rossy, 8 bonds of the Banco Agrícola, last issue of 1896, with their coupons, or in their absence, the sum of 800 provincial *pesos,* equivalent to 480 *pesos* gold, with legal interest from November 13, 1896, with the costs against the defendant. This judgement was entered May 31, 1905.

The defendant, Manuel F. Rossy, took an appeal from this judgment and acknowledged in his answer to the complaint that he entered into a contract with the Carmelite Nuns through their attorney in fact, Manuel Díaz Caneja, by which contract he had agreed to redeem an annuity which constituted a charge on an estate belonging to him, by delivering to said attorney in fact 8 mortgage bonds with their respective coupons, to which end he signed a document which he left in the possession of said Díaz Caneja near the end of the year 1896.

In the brief which said defendant, now the appellant, filed in this Supreme Court, he again acknowledged said contract, but alleged that he had not complied therewith because there was no consideration, and, consequently, that it does not produce any effect whatsoever, according to section 1242 of the Revised Civil Code, which is article 1275 of the former Code.

In support of this allegation he affirms that the consideration for the contract was an annuity (*censo*) which later was found not to exist because subsequently, as alleged in the

answer to the complaint, he heard that the registrar of property had denied the transfer of said annuity to the new books of the registry, the estate belonging to him being recorded as free from said encumbrance.

Here two matters are confused which are entirely different and which may produce different findings. The existence of the annuity is one thing and the failure to transfer such annuity to the new books is another, and it is from the very fact of its not having been transferred that its existence in this case is deduced.

The contract entered into appears to have all the elements of a compromise, and then it must be agreed that its consideration was to avoid the provocation of a suit, as required by section 1711 of the Revised Civil Code, which corresponds to article 1809 of the former Code.

But as it does not clearly appear from the real record, which is what we can examine, that there existed a threat or intention to bring suit, we do not wish to commit an error in the classification of the contract entered into.

But be it what it may, the appellant must agree that the contract involves a valuable consideration, and in contracts of this character the consideration for each contracting party is understood to be, according to section 1241 of the Revised Civil Code, which is the equivalent of article 1274 of the old Civil Code, the prestation or promise of a thing or services by the other party, and the Carmelite Nuns having made the prestation of cancelling the annuity upon the payment of a certain sum to them, in the form described, the existence of a certain, indubitable and juridical consideration in the contract the subject of the action and this appeal cannot be ignored, which consideration was not, as sought to be established, the transfer of the annuity to the new books of the registry.

But assuming for a moment that the consideration is not stated in the contract, although we have already seen that it is stated, then comes section 1244 of the Revised Civil Code,

which is equivalent in every respect to article 1277 of the former Code, to tell us that a consideration is presumed to exist until the debtor shall prove the contrary, and we cannot say that he has proved anything, although the appellant has brought to this appeal copies of documents and depositions of witnesses, it is a fact that the trial judge found against the defendant on the evidence as a whole, and we have no bill of exceptions or statement of facts here in the form prescribed by section 214 of the Code of Civil Procedure. We cannot therefore consider such evidence on this appeal and for the sake of brevity we will refer to cases which are similar in this respect, and which are those of *Cora May Belden de Smith* v. *Gabriel González y García,* and *Juan Y. Caloca* v. *José L. Valseca,* recently decided by this court.

Having considered this matter from every point of view, we come to the conclusion that the judgment rendered on May 23, 1905, by the District Court of San Juan is a just one, and should therefore be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández, MacLeary and Wolf concurred.